IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID GEVAS,  <br>  Plaintiff,  <br>vs.  <br>JOYCE HOSKINSON, HEATHER CECIL, and CAROL HAHN,  <br>  Defendants. | )  <br>)  <br>)  <br>)  Case No.  11–cv–0325–MJR–SCW  <br>)  <br>)  <br>)  <br>) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Upon what everyone thought was the full referral of this § 1983 civil rights case to Magistrate Judge Stephen C. Williams, the Magistrate Judge granted Defendants' fully-briefed motion for summary judgment (Doc. 213), thereby disposing of all claims. Earlier today, the Magistrate Judge granted (Doc. 230) Plaintiff's Motion to Alter/Amend Judgment,[1] and the case was re-opened and referred back to the undersigned district judge.

The Court now takes up the same summary judgment motion ruled on last June, as well as Plaintiff's request (Doc. 238) for leave to amend his response to that motion.

Broadly, Plaintiff's case can be divided into two theories of relief: (1) interference with his legal mail, and (2) retaliation. A thorough review of the precedent and the record leads the undersigned to conclude that the Magistrate's analysis (Doc. 226) of both issues was entirely sound, such that it needs no change:

\* \* \*

Plaintiff's case stems from his time in Lawrence Correctional Center, where Defendant Hoskinson was the mailroom supervisor from 2001 through 2011, and

---

[1] Plaintiff successfully challenged the viability of his consent to the Magistrate Judge.

Defendants Hahn and Cecil were mailroom office assistants. (Cecil temporarily assumed the supervisor position in October 2011). During 2009 and 2010, while Plaintiff was incarcerated at Lawrence, he frequently communicated with his attorney, Barbara Clinite, about Plaintiff's deliberate indifference case against officials at Stateville, another Illinois Department of Corrections (IDOC) institution.

Plaintiff alleges Defendants violated his right of access to the courts by opening Plaintiff's legal mail outside his presence on three occasions over a six month span: September 16, 2009; October 9, 2009; and February 11, 2010. On each occasion, Plaintiff was informed that the mail was opened outside his presence; he eventually received all three letters (Doc. 214 at 22, 28, 31). Defendants assert (and provide mail receipts and testimony to show) that Plaintiff's mail was opened in error (*see* Doc. 11 at 13, 20; Doc. 214-1 at 115). Plaintiff counters that Defendants opened his legal mail because they were looking for incident reports regarding his deliberate indifference lawsuit (Doc. 218-1 at 25, 29-30). Plaintiff also contends that the mail must have been opened intentionally because three letters were opened within a six month period, even after he notified the warden and mail room staff of the incidents (Doc. 218-5; Doc. 218-6). Plaintiff finally notes that, of eleven grievances at Lawrence concerning legal mail filed in a ten month period, three concerned Plaintiff's legal mail (Doc. 218-7). During his deposition, when asked to estimate how often he communicated with Attorney Clinite, Plaintiff responded: "Very frequently . . . I would say it was frequent enough, to maybe two a week. You know, this is just---I really can't answer that without looking" (Doc. 218-1 at 12–13).

Plaintiff next alleges Defendants "overly scrutinized" his legal mail on April 29, 2009, July 20, 2009, and September 10, 2009, by writing notes for a correctional officer to verify his mail was indeed legal mail. On those dates, Plaintiff received mail from Attorney Clinite, and on each occasion a mailroom official wrote "Please verify contents of legal mail" on the receipt (Doc. 11 at 12–13). According to Plaintiff, when legal mail is delivered to an offender, normal procedure is for the officer delivering the mail to have the offender sign the legal mail receipt; then the officer opens the mail in front of the offender, inspects for contraband, and hands the mail to the offender (Doc. 218-1 at 13–14). Correctional officers followed that procedure

when delivering the April 29, July 20, and September 10 mail to Plaintiff (*id.*).

Plaintiff finally alleges that Defendants—falsely stating that his mother's letters were perfumed—retaliated against him for filing grievances in September and October 2009 by returning unread letters to his mother. In October 2009, a piece of mail from Plaintiff's mother was marked "no perfume" and returned to sender (Doc. 214-1 at 116). Plaintiff, who eventually received the letter, denies that the envelope from his mother was perfumed, and provides a letter from her to that effect (Doc. 218-8 at 4). According to Lawrence's Offender Orientation Manual, mail cannot enter the prison if it is perfumed (Doc. 214-1 at 116).

## SUMMARY JUDGMENT STANDARD

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Vill. of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations**

omitted).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) (abrogated on other grounds by *Spiegla II*, 481 F.3d at 966 (7th Cir. 2007)). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

## ANALYSIS

Defendants challenge the sufficiency of the evidence supporting Plaintiff's claims, and contend they are entitled to summary judgment on Plaintiff's interference with legal mail and his First Amendment retaliation claims. For the following reasons, Defendants are entitled to judgment as a matter of law on both claims.

### 1. *Interference with Legal Mail*

Plaintiff has presented two theories of relief based on Defendants' alleged interference with his legal mail: (1) that Defendants impermissibly opened his legal mail on September 16, 2009; October 9, 2009; and February 2010; and (2) that Defendants "overly scrutinized" his mail on April 29, 2009; July 20, 2009; and September 10, 2009. Defendants are entitled to judgment as a matter of law on both theories.

Inmates have a First Amendment right to both send and receive mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). That right, of course, does not preclude prison officials from examining mail to ensure it does not contain contraband. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974)). An inmate's *legal* mail is entitled to even greater protections because of the potential for interference with his right of access to the courts. *Kaufman*, 419 F.3d at 685–86 (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)). The Seventh Circuit has clarified that—because a confidential communique with a lawyer is aimed to win a

case rather than to enrich the marketplace of ideas—it is "more straightforward" to approach an interference-with-legal-mail claim not through the First Amendment, but via a prisoner's Fourteenth Amendment right of access to the courts. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803 (7th Cir. 2010). *See id*. at 801 **(prison officials reading mail to / from prisoners who sue them "is like a litigant's eavesdropping on conferences between his opponent and the opponent's lawyer.").**

Officials "potentially" violate an inmate's access-to-courts rights if they open legal mail (marked with an attorney's name and a warning that it is, in fact, legal mail) outside of the inmate's presence. *Kaufman*, **419 F.3d at 686 (citing** *Wolff*, **418 U.S. at 577).** Regulations or practices that affect a prisoner's legal mail also implicate the First Amendment, but prison security is a sufficiently important governmental interest to justify limitations on a prisoner's First Amendment rights. *Rowe*, **196 F.3d at 782.** Officials are permitted to open incoming mail from a prisoner's lawyer to verify that it is indeed a communication related to current representation, from a lawyer who is authorized to practice law in the relevant jurisdiction and is in fact the prisoner's lawyer. *Guajardo-Palma*, **622 F.3d at 804.** Ongoing interference with legal mail violates a prisoner's rights. *Castillo v. Cook Cnty. Mail Room Dep't*, **990 F.2d 304, 306 (7th Cir. 1993).** Relatively short-term and sporadic delay in delivering mail does not. *Rowe*, **196 F.3d at 782;** *Zimmerman v. Tribble*, **226 F.3d 568, 573 (7th Cir. 2000).**

Further, success on an access-to-courts claim requires a prisoner to show actual injury: Relief for the denial of access to the courts "is intended to remedy rights denied in a separate and distinct right to seek judicial relief for some wrong . . . [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *In re Maxy*, **674 F.3d 658, 661 (7th Cir. 2012) (citing** *Christopher v. Harbury*, **536 U.S. 403, 415 (2002)).** *See also Lehn v. Holmes*, **364 F.3d 862, 868 (7th Cir. 2004) (prisoner must show some "quantum of detriment" caused by the challenged conduct).**

      **a.**      <u>**Opening of Legal Mail**</u>

As to Plaintiff's claim that Defendants opened legal mail outside his presence, the evidence, when taken as a whole, is not enough to get Plaintiff's case to trial. Defendants concede they opened Plaintiff's legal mail in September 2009, October 2009, and February 2010, but argue there is no evidence those actions were anything other than negligent, and alternatively that those three occasions do not constitute a constitutional violation. Plaintiff counters that the record could support an inference that Defendants intentionally opened Plaintiff's mail, as well as an inference that three instances of opened mail indicate a pattern and practice of opening legal mail.

Plaintiff relies on *Castillo v. Cook Cnty. Mail Room Dep't*, where the Seventh Circuit held a prisoner stated a claim of interference with legal mail because—at the dismissal stage—a fact-finder could not determine whether the officials examined all of the plaintiff's legal mail, or whether their actions were sporadic. ***Castillo*, 990 F.2d at 306.** In that case, the complaint alleged three instances (in eight months) of legal mail being opened outside the plaintiff's presence, and the record contained little else to indicate whether those three instances were an ongoing practice or represented "only a small fraction" of the prisoner's legal mail. *Id.*

But *Castillo* concerned access-to-courts at the dismissal stage, and this case is at summary judgment. The *Castillo* panel was concerned that the district court had decided the case on the benefit of the complaint alone, without any development of the "meager" record. *Id.* Here, there is evidence from Plaintiff himself that Defendants opened his legal mail infrequently relative to the total amount of legal mail he was sending and receiving. When asked how often he communicated with his attorney, Plaintiff responded:

    A.  Very frequently.

    Q.  Could you estimate a number of times that you either would send her letters or receive letters from her in any given week or month?

    A.  I would say it was frequent enough, to maybe two a week. You know, this is just---I really can't answer that without looking.

    Q.  Okay.

> A. So, I would strike my earlier answer and say I can't really answer that without really looking at it. But very frequently, you know. And the only correspondences were regarding [Plaintiff's] case.

(Doc. 218-1 at 12–13). In short, Plaintiff's mail was opened outside his presence three times over the course of a six month period during which he was communicating with his attorney "very frequently," approximately once or twice a week. Though it is impossible to measure the exact percentage of Plaintiff's legal mail opened outside his presence, it is clear that "only a small fraction" of his letters from his attorney were opened. And the obverse of *Castillo*'s holding is that such a small fraction does not rise to the level of a constitutional violation.

*Castillo* therefore cuts against Plaintiff. The scant record there, where three letters could have represented "all of [the plaintiff's] legal mail," stands in relief to the evidence here, which shows three instances of opened legal mail against a backdrop of regular, continuous communication between Plaintiff and his attorney.[2] And the fact that the opened mail concerned Plaintiff's case against officials at another prison cannot help him: all of the "very frequent" correspondences between Plaintiff and his attorney concerned the same ongoing deliberate indifference case, so it cannot be inferred that Defendants had a practice of opening Plaintiff's mail based on its content. The Court concludes, as a matter of law, that three isolated instances where Defendants opened Plaintiff's legal mail—in the context of a six month stretch where Plaintiff was clearly receiving the vast majority of that mail—are too sporadic to support an inference that Defendants denied Plaintiff his right of access to the courts. *See Rowe*, 196 F.3d at 782. Defendants are entitled to judgment as a matter of law, and summary judgment will be granted.

  b. **Extra Scrutiny of Legal Mail**

Plaintiff further alleges that Defendants improperly directed correctional officers to examine Plaintiff's legal mail on April 29, 2009, July 20, 2009, and September 10, 2009, when Defendants placed notes on envelopes instructing officers to "verify contents are legal mail." Plaintiff contends those notes caused the officers

---

[2] Plaintiff also relies on a Third Circuit case, *Bierugu v. Reno*, in support of his position. In that case, though, the plaintiff had alleged that his mail was opened fifteen times and had shown evidence of five instances over a three month period. *Bierugu*, 59 F.3d at 1452. Here, Plaintiff's theory is not that three isolated instances are representative of a larger problem, but that that three isolated instances by themselves represent a constitutional violation. They do not.

to go beyond what was legally allowed. Defendants move for summary judgment on the issue, arguing their behavior is permissible under controlling caselaw.

Prison officials are allowed to verify that mail marked as "legal" is not actually "from a criminal confederate of the prisoner masquerading as a lawyer." *Guajardo-Palma v. Martinson*, **622 F.3d 801, 804 (7th Cir. 2010).** As such, under the Supreme Court's holding in *Wolff v. McDonnell*, **418 U.S. at 576–77 (1974),** prison officials are "permitted to open incoming mail from a prisoner's lawyer to verify that it is indeed a communication, related to current or prospective representation, from a lawyer who is authorized to practice law in the relevant jurisdiction and is in fact the prisoner's lawyer." *Guajardo-Palma*, **622 F.3d at 804.** In return, prisoners are allowed to be present when prisoner officials review the mail. *Id.* The Seventh Circuit has acknowledged the practice is imperfect, since prison officials actually have to glance at the content of the letter to "verify its bona fides. But the imperfection is necessary to protect the prison's interest in security." *Id.* **at 805.**

Here, there is no evidence prison officials went beyond what is allowed by *Wolff.* Defendants may have instructed other officers to "verify contents are legal mail," but that practice is precisely what *Wolff* contemplates. Plaintiff's deposition includes testimony that, when he normally receives legal mail, an officer has him sign a receipt "and proceeds to open [the envelope] in front of me and hands me the mail. Once he determines that there's no contraband in the envelope" (Doc. 218-1, 14). Plaintiff further testified that, on the dates Defendants scrawled notes to verify that his mail was indeed legal, the correctional officers acted the same way: they opened the mail in front of him, checked its contents, and handed him his mail (*id.* at 14–16). Defendants' written reminders to correctional officers to act within constitutional bounds is not a theory upon which Plaintiff can obtain relief, and summary judgment will be granted.

### 2. Retaliation

An official who retaliates against a prisoner because that prisoner filed a grievance violates the prisoner's First Amendment rights. *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000).** Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a

deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *See also* **Watkins v. Kasper**, **599 F.3d 791, 794 (7th Cir. 2010);** **Bridges v. Gilbert**, **557 F.3d 541, 546 (7th Cir. 2009).**

* * *

Before analyzing Plaintiff's retaliation claim, the Court first **DENIES (Doc. 238)** Plaintiff's motion for leave to amend his summary judgment response. Plaintiff seeks to supplement his brief with an affidavit from his mother[3] that (he says) his attorney failed to attach. Plaintiff filed his response to the summary judgment motion on April 18, 2013, but did not seek to amend his responsive brief until August 12, 2013. By that time, the deadline for responding to the summary judgment had long since passed. Further, at the time that Plaintiff's response was filed, he was represented by an attorney. The Court does not accept *pro se* filings when a plaintiff is represented, and his counsel's decision not to include the affidavit is a tactical decision on his attorney's part. Plaintiff argues that he did not know that his counsel had failed to attach an affidavit from his mother because he did not receive any exhibits with his response. The Court finds that argument disingenuous: Plaintiff's responsive brief identifies each exhibit that is attached to his response and explains the contents of those exhibits. A reading of the brief indicates that letters and envelopes from Plaintiff's mother were attached, but there is no indication that an affidavit from Plaintiff's mother was a part of the exhibits. Thus, Plaintiff could have determined from reading the responsive brief (which he had) that an affidavit from his mother was not attached, and sought to rectify that issue with his attorney. He did not, nor did he timely seek to amend his response. Thus, the Court **DENIES** motion for leave to amend (**Doc. 238**). The affidavit from Plaintiff's mother would not change the result here in any case.

---

[3] Magistrate Judge Williams' grant of Defendants' summary judgment motion was premised in part on Plaintiff's failure to provide admissible evidence.

Plaintiff alleges Defendants returned an October 2009 letter from his mother (for the false rationale there was perfume on the letter) in retaliation for grievances Plaintiff filed on September 17, 2009 and October 9, 2009.[4] This single act of retaliation, even if true, is insufficient to support Plaintiff's claim. Returning a single letter (or even several letters) to Plaintiff's mother is not the type of deprivation that would deter Plaintiff from filing grievances in the future. This is particularly true in light of the fact that Plaintiff continued to receive correspondence from his mother.

Given the Court's ruling, even if the Court accepted Plaintiff's affidavit from his mother testifying she did not perfume the letter, the result would be the same. Sending the letter back, whether or not it had anything to do with perfume or, for that matter, whether or not it was retaliatory is not a sufficient deprivation to sustain Plaintiff's claim. *See Bridges v. Gilbert*, **557 F.3d 541, 554 (7th Cir. 2009) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise…") (internal citation omitted).** Accordingly, Defendants are also entitled to summary judgment on Plaintiff's retaliation claim.

### CONCLUSION

Plaintiff's motion for leave to amend his response (**Doc. 238**) is **DENIED,** and Defendants' Motion for Summary Judgment (**Doc. 213**) is **GRANTED.** No claims remain in the case, so the Clerk is **DIRECTED** to enter final judgment against David Gevas and in favor of all Defendants. All pending motions are **MOOT**, and all case settings are hereby **TERMINATED.**

**IT IS SO ORDERED**.  s/ *Michael J. Reagan*
Dated: <u>March 6, 2014</u>  **MICHAEL J. REAGAN**
United States District Judge

---

[4] On March 20, 2013, Plaintiff was permitted to amend his Amended Complaint so as to allege that multiple letters from his mother had been returned to sender. Other than Plaintiff's assertions, the word "letters" in Plaintiff's mother's November 2009 correspondence is the only piece of evidence on the record that multiple letters to Plaintiff had been returned. For the reasons discussed above, that correspondence is not enough to get this case to trial.